IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTES EXPRESS LINES,<br><br>    *Plaintiff,*<br><br>  v.<br><br>U.S.A LAMP AND BALLAST RECYCLING, INC. D/B/A CLEANLITES RECYCLING, INC.,<br><br>    *Defendant.* | Civil Action No. 2:21-cv-00609<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

  Almost two years ago, Plaintiff Estes Express Lines ("Estes") served its initial disclosures upon Defendant U.S.A. Lamp and Ballast Recycling Inc., d/b/a Cleanlites Recycling Inc.'s ("Cleanlites") pursuant to Federal Rule of Civil Procedure 26(a) ("Rule 26"). Estes' disclosures identified a number of categories of damages which it computed for a total of $552,563.31. Estes never supplemented its initial disclosures. On April 6, 2023, it served an expert report on Cleanlites which offered, for the first time, an opinion that Cleanlites is liable for approximately $11 million for future repaving work on the impacted site. Pending before the Court is Cleanlites's Motion to Preclude Plaintiff's Damages Claims Not Disclosed in Discovery ("motion"). (ECF No. 66). Specifically, Cleanlites requests the Court to preclude Estes "from asserting the damages set forth in its expert report dated March 31, 2023, and [limit] the damages [Estes] may seek or assert to those set forth in [Estes'] Initial Disclosures … pursuant to Federal Rules of Civil Procedure 26 and 37." (*Id.* at pp. 9-10). The initial disclosure and supplementation requirements set forth at Rule 26 are fundamental elements of federal practice. They are mandatory. In this

1

case, Estes' failure to comply with its disclosure obligations warrants the exclusion of the damages at issue. Cleanlites' motion will be granted.

## I.   BACKGROUND

This case arises out of a spill that occurred when Estes contracted to transport a shipment of mercury for Cleanlites. While the shipment was at a trucking terminal in Eighty Four, Pennsylvania, it was discovered that the container holding the mercury fell on its side and leaked "approximately 6.6 gallons of mercury, at a weight of approximately 751 lbs … contaminating the Estes Eighty Four terminal, including the Estes trailer." (ECF No. 36, ¶¶ 28, 32). Estes raises claims sounding in negligence, strict liability pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. 9601 *et seq.* ("CERCLA") and strict liability under Pennsylvania's Hazardous Sites Cleanup Act ("HSCA") for damages that it incurred as a result of the spill.

The Court issued its first Case Management Order on July 21, 2021. (ECF No. 11). That order required that initial disclosures pursuant to Rule 26(a)(1) be served on or before July 20, 2021. Estes served its initial disclosures on August 5, 2021. (ECF No. 69-1, p. 4). As to the "computation of each category of damages" required by Rule 26(a)(1)(A)(iii), Estes stated:

- See attached Dropbox link containing documents bates-labeled Estes000001-Estes000128.
- Discovery is ongoing.

(*Id.* at 2). Estes also disclosed the following chart summarizing its computation of damages:

|   | A | B |
|---|---|---|
| 1 | ESTES EXPRESS LINES<br>KNOWN COSTS TO DATE/COSTS ARE ONGOING | |
| 2 | RECLAMATION COSTS as of 7.7.2021 | |
| 3 | EnviroServe as of 7.7.21 | 423,663.47 |
| 4 | ERTS as of 7.7.21 | 18,377.00 |
| 5 | ENVIRONMENTAL REGULATION COMPLIANCE | |
| 6 | Babst Calland | 28,648.38 |
| 7 | CEC 5/19/2021 | 41,253.45 |
| 8 | S&ME James Wellons as of 4.13.21 | 15,467.38 |
| 9 | OTHER COSTS | |
| 10 | Trailer #295307 Net Book Value | $21,960 |
| 11 | Revenue Related to Shipment | 3193.63 |
| 12 | Cost of Lost Use of Terminal in Eighty-Four, PA | TBD |
| 13 | Additional Costs | TBD |
| 14 | TOTAL | $552,563.31 |

(ECF No. 66-2). It is undisputed that Estes never supplemented its Rule 26(a)(1) initial disclosures.

For purposes of the Court's examination of the instant motion, it is important to briefly describe the timeline of the discovery period. As stated above, the Court issued its first Case Management Order on July 21, 2021. Pursuant to that order, discovery was slated to close on May 31, 2022. (ECF No. 11, p. 1). On February 22, 2022, the Court issued a First Amended Agreed Case Management Order upon mutual agreement of the parties, which set the close of fact discovery as August 22, 2022. (ECF No. 25). On July 28, 2022, upon request and agreement of the parties, the Court issued its Second Amended Agreed Case Management Order. (ECF No. 27). It set October 21, 2022, as the discovery deadline. (*Id.*). On September 16, 2022, the Court issued the Third Amended Agreed Case Management Order, again, pursuant to the joint request of the parties. (ECF No. 31). It set January 20, 2023, as the end of fact discovery. (*Id.*). On January 20, 2023, the Court received a letter indicating that the parties were attempting to arrange a single deposition outside the time for fact discovery to accommodate the schedule of a witness. (ECF No. 45). The Court conducted a telephonic status call with counsel on February 16, 2023, to discuss the adjustment of remaining deadlines as a result of the need to take one, single

supplemental deposition. (ECF No. 50). The Court requested that the parties meet and confer on scheduling and submit an agreed upon case management plan for the conclusion of expert discovery and summary judgment. (*Id.*). They did so, and upon recommendation of the parties, the Court issued a Fourth Amended Agreed Case Management Order on March 10, 2023. (ECF No. 56). It only addressed the deadlines for expert discovery and summary judgment. (*Id.*). Fact discovery had closed. Further, the order plainly states "**NO FURTHER EXTENSIONS OF TIME WILL BE GRANTED**." (*Id.*).

On April 6, 2023, Estes served Cleanlites with its expert disclosures and two expert reports. (ECF No. 66-3). A March 31, 2023 expert report of Mark L. Orzechowski, P.G. ("Orzechowski Report"), addresses the damages that Estes intends to seek. (*Id.*). This is the expert report at issue in the motion presently before the Court.[1] The Orzechowski Report opines on "the future cost to replace the asphalt in the area impacted by the mercury release." (*Id.* at 15). It estimates the following costs:

- Reapplication of Sealant: approximately $40,000

- Removal and Disposal of Mercury-Impacted Asphalt: approximately $11 million ($7.5 to $14.5 million).

(*Id.* at 16-17). Using the $11 million figure as the estimated measure of removal and disposal costs, and subtracting the cost associated with ordinary paving required as maintenance in due course (if the area was not impacted by the mercury spill), the Orzechowski Report opines that the total measure of damages associated with the future cost of replacing the asphalt is $10,000,000. (*Id.* at 17).

---

[1] An April 6, 2023 report of Dr. Michael Hickner addressing liability is not at issue. (*Id.* at 2).

Cleanlites filed the instant motion, seeking to "preclude[] plaintiff from asserting the damages set forth in its expert report dated March 31, 2023, and limiting the scope of damages plaintiff may seek or assert to those set forth in Plaintiff's Initial Disclosures." (ECF No. 66, pp. 9-10). Cleanlites argues that it was "blindsided and shocked" by the Orzechowski Report, which was considerably larger than the calculation of damages set forth in Estes' initial disclosures. As the motion explained, the Orzechowski Report showed over a twentyfold increase from the $552,563.31 damages amount disclosed by Estes prior to April 6, 2023. (*Id.* at 2, 5). Cleanlites contends that "Estes [] never identified future remedial damages, computations, or this category of damages that it now intends to pursue." (*Id.* at 3). Additionally, Cleanlites asserts that Estes "failed to comply with Rule 26(a)" by neglecting to update or supplement its claimed damages "between the time [Estes] served [its] initial disclosures in 2021 and [its] expert report in 2023." (*Id.* at 3-4). Cleanlites argues that "Estes' actions have caused severe prejudice to Cleanlites and the Court" and provide the basis for its current motion to preclude. (*Id.* at 7).

In opposition, Estes contends that its future damages calculations "were properly within the scope of expert testimony, which Estes retained and disclosed timely in accordance with Plaintiff's Rule 26(a)(2) obligations and this Court's Fourth Amended Case Management Order." (ECF No. 71, p. 4). Further, Estes argues that Cleanlites "was on notice of the potential for future remediation costs through Estes' Complaint, Amended Complaint, and Rule 26 Initial Disclosures, all of which noted that costs are ongoing[.]" (*Id.*). Estes asserts that it "should not be punished for Cleanlites' failure to consult with experts on the possibility of future reclamation needs, or to offer an expert report of its own." (*Id.* at 5). Lastly, while Estes refutes any alleged violation of Rule 26, it contends that even if it violated the requirements of Rule 26, "there is substantial justification for the timeline of disclosure" because Estes "received its calculation of reclamation

5

costs to be incurred on March 31, 2023, and produced the same to [Cleanlites] on April 6, 2023[,]" which, according to Estes, demonstrates that the disclosure delay was reasonable under the circumstances. (*Id.* at 8).

## II.  ANALYSIS

**A. Rule 26 places a burden on all litigants to disclose each category and computation of damages they seek and to supplement their disclosures throughout the litigation.**

Rule 26 imposes upon all litigants an obligation to disclose, without request, information relating to damages:

> (a) **Required Disclosures**.
>
> (1) ***Initial Disclosures***.
>
> > (A) *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
> >
> > \* \* \*
> >
> > (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(A)(iii). "Rule 26 disclosures are meant to provide the opposing party with 'information as to the identification and location of persons with knowledge so that they can be contacted in connection with the litigation ... for being interviewed, for being deposed, or for providing background information.'" *Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 07-3770, 2010 WL 1849913, at *3 (D.N.J. May 7, 2010) (quoting *Bilrite Corp. v. World Road Markings, Inc.*, 202 F.R.D. 359, 362 (D. Mass. 2001)). Under Rule 26, a party has a continuing obligation to update and keep its disclosures current:

6

> **(e) Supplementing Disclosures and Responses**
>
> **(1)** *In General*. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> **(B)** as ordered by the court.

Fed. R. Civ. P. 26(e)(1). "The obligation to update initial disclosures is meant to ensure that the playing field remains level, narrow the relevant issues, and avoid 'undue prejudice and surprise' to the opposing party." *Eli Lilly*, 2010 WL 1849913, at *3.

### B. Estes' initial disclosures with respect to damages did not comply with the obligations of Rule 26.

As a threshold matter, the Court must decide whether Estes violated the disclosure and supplementation requirements of Rule 26 with respect to its claim for damages. Cleanlites argues that Estes initial disclosures failed to identify any damages relating to future remedial damages arising out of a repaving of the impacted area. It also argues that Estes' disclosures were not compliant in their computation of damages—disclosing a total computation of $552,563.31, rather than the $10,700,000.00 estimate for future damages alone[2] offered by the Orzechowski Report. Estes counters that its Rule 26 Initial Disclosures stated that "discovery was ongoing" Estes also argues that its disclosure of reclamation costs said that they were "as of 7.7.2021" implying further, future, costs. It argues that its statement "discovery is ongoing[,]" and its identification of the "additional costs—TBD" item are sufficient to encompass the damages it now seeks through the

---

[2] The Orezechowski Report does not purport to be a comprehensive summary of all damages sought by Estes. Rather, it opines on only one category of damages: "the future cost to replace the asphalt in the area impacted by the mercury release." (ECF No. 66-3, p. 15).

7

Orzechowski Report. Finally, while it acknowledges that it never supplemented its initial disclosure, it argues that the existing disclosure, coupled with its pleading of ongoing damages in its Amended Complaint, was enough to put Cleanlites on notice of its claimed damages so that Cleanlites could have probed the topic of future remediation/repaving in discovery.

The Court holds that Estes' initial disclosures cannot be interpreted to include the category of damages that are the subject of the Orzechowski Report. The chart outlining Estes' damages computation lists a number of categories that are facially inapplicable to the repaving damages at issue. The specified items under the heading "Other Costs" cannot be construed as including damages associated with future repaving. Nor can the placeholder "Additional Costs." This does not disclose anything and is a nullity in light of the obligations imposed by Rule 26(a)(1)(A)(iii). Nor can the items under the heading "Environmental Regulation Compliance" be construed as disclosing the damages at issue here. The costs identified under this heading do not relate to costs associated with remedial activities like repaving. In no way can they be viewed as putting Cleanlites on notice of damages associated with future repaving.

While, as a general matter, a future repaving of the impacted area may be categorized as a reclamation cost, Estes' initial disclosures cannot be read to include this item. Only two specific items were listed under the heading Reclamation Costs: "EnviroServe as of 7.7.21" and "ERTS as of 7.7.21." Neither of these identifications reference, or in any way put Cleanlites on notice of, damages relating to a future repaving. Nor can Estes reasonably argue that the heading and each specified item are qualified by "as of 7.7.2021." If anything, this highlights that the initial disclosures are solely backward looking and do not indicate the inclusion of any specific future damages—including, but not limited to, the repaving costs addressed by the Orzechowski Report.

An analysis of the initial disclosures served by Estes leads to one conclusion—that Estes failed to identify any category or item of damages relating to a future repaving of the impacted area. There is nothing in the initial disclosures that would place Cleanlites on notice that Estes intended to seek an estimated $10,700,000.00 in damages for repaving. The initial disclosures are, therefore, faulty in *both* their failure to identify these damages by category *and* in failing to include them in the calculation of the amount of damages to be sought. Indeed, the single class of undisclosed damages addressed by the Orzechowski Report dwarf the total of all items disclosed in Estes' initial disclosures. To overlook their omission would be to eviscerate both the language and purpose of Rule 26(a)(1)(A)(iii).

Estes correctly points out that initial disclosures are served early in the litigation and that its own disclosures stated that "discovery is ongoing." (ECF 69-1, p. 2). This does not excuse Estes' failure to disclose the repaving damages. Under Rule 26(e)(1), Estes had an ongoing duty to supplement as soon as it learned "that in some material respect the disclosure or response [was] incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to [Cleanlites] during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). Estes did not do so. It never supplemented its initial disclosures to identify future repaving damages and to demonstrate the calculation of the substantial amount of those damages. It first disclosed these damages in the Orzechowski Report, served after the close of fact discovery. Nor was it, as Estes argues, Cleanlites' obligation to attempt to take discovery about undisclosed items and amounts of damages. The obligation to make and supplement initial disclosures is on the disclosing party. A vague or incomplete initial disclosure does not shift the burden to the party in receipt of the initial disclosure—especially where, as here, the initial disclosure was so deficient as to give no reasonable notice of a type of damages sought, much less a computation of the same.

The Court finds that Estes failed to identify in its initial disclosures any damages relating to future repaving and, consequently, to include any calculation of the amount of such damages. Nor did Estes supplement its disclosures to identify those damages and set forth those calculations. As such, the Court holds that Estes has failed to comply with the mandates of Rule 26. It must next decide whether Estes' violation of its disclosure and supplementation obligations warrants the sanction of exclusion.

### C.   Estes' failure to disclose and supplement with respect to the repaving damages warrants the sanction of exclusion.

Federal Rule of Civil Procedure 37 ("Rule 37") authorizes a district court to impose sanctions against a party that does not provide discovery in accordance with the Federal Rules or a court order. *See* Fed. R. Civ. P. 37. The purposes of Rule 37 include penalizing a culpable party or attorney and deterring others from engaging in similar conduct. *See Nat'l Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Rule 37(c) permits the imposition of sanctions against a party who fails to disclose or supplement discovery pursuant to Rule 26(a) and (e). Rule 37(c)(1) provides, in pertinent part:

> **Failure to Disclose or Supplement**. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorneys fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).[3] As provided in the rule, sanctions should not be imposed if a failure to disclose or supplement was "substantially justified." "The non-producing party shoulders the burden of proving substantial justification for its conduct or that the failure to produce was harmless." *Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002) (citation omitted). Indeed, "Rule 37 is written in mandatory terms, and 'is designed to provide a strong inducement for disclosure of Rule 26(a) material.'" *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) (citation omitted).

The United States Court of Appeals for the Third Circuit created a five-factor test to assist courts in determining "whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). The factors to be considered include:

> (1) the prejudice or surprise to the party against whom the evidence was offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood the admission of the late evidence would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) the bad faith or willfulness in failing to comply with the District Court's orders; and (5) the importance of the evidence to the proffering party.

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir.1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985). The Third Circuit has made clear that "exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court

---

[3] In in addition to Rule 37, the Local Rules of Court for the Western District of Pennsylvania provide,
> Failure to fully disclose in the pretrial statements (or, as permitted by the Court, at or before the final pretrial conference) the substance of the evidence proposed to be offered at trial, may result in the exclusion of that evidence at trial, at a hearing or on a motion unless the parties otherwise agree or the Court orders otherwise.

LCvR 16.1(C)(7).

order by the proponent of the evidence." *Meyers,* 559 F.2d at 905 (quoting *Dudley v. South Jersey Metal, Inc.,* 555 F.2d 96, 99 (3d Cir. 1977). *See also Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997) (same). Nevertheless, "even if there is no evidence of bad faith, where an oversight is not rationally explained and is surely prejudicial, exclusion is appropriate." *Aetna, Inc. v. Mednax, Inc.,* 2021 WL 949454, *4 (E.D. Pa. March 12, 2021) (citation omitted).

The Court can discern no factors from Estes' briefs or the broader record of this case that would support a determination that its failure to include its claim for future repaving damages and a calculation of the substantial amount it seeks for those damages in its initial disclosures or a subsequent supplementation is "substantially justified." Nor has Estes offered any compelling argument sufficient to shoulder its "burden of proving substantial justification for its conduct or that the failure to produce was harmless." *Tolerico,* 205 F.R.D. at 175. Rather, instead of trying to justify its non-compliance with the disclosure requirements of Rule 26, Estes offered unavailing arguments that it satisfied its obligations. Having failed to carry its burden of showing that its non-disclosure was substantially justified, the Court will engage in the Third Circuit's five-part test to determine whether exclusion is warranted.

*1) Prejudice or surprise to Cleanlites*

The Court finds that Estes' failure to disclose the substantial amounts of damages it seeks for future repaving work was a surprise to Cleanlites. It believes that Cleanlites was justified in being "blindsided and shocked" by the damages identified in the Orzechowski Report. From the time Estes served its initial disclosures on August 5, 2021 until the disclosure of its expert reports on April 6, 2023—a period of twenty months—Estes never disclosed that it would seek damages for future repaving of the impacted area and that those damages amounted to approximately eleven million dollars. As explained above, Cleanlites was not obligated to gear its discovery to

12

categories and magnitudes of damages that were not disclosed by Estes. Cleanlites states, and the Court believes, that it was surprised by the inclusion of a new class of damages and the stark difference in the amount of those damages in comparison to the damages disclosures made in Estes' initial disclosures.

The Court holds that Estes' failure to disclose the future repaving damages until the disclosure of the Orzechowski Report is prejudicial to Cleanlites. There is not, and cannot be, any justification for failing to disclose the substantial majority of damages sought in an action until after the close of fact discovery. This was not only a formal noncompliance with the provisions of Rule 26, but a violation of the purpose undergirding that rule—candor about the nature of claims and damages and the avoidance of litigation surprises. Estes' never-supplemented initial disclosures identified $552,563.31 in damages. Apparently on top of that, the Orzechowski Report identifies eleven million dollars for future repaving—an amount approximately twenty-two times higher than Estes disclosed.

The extreme difference between the amounts of damages disclosed and the amount now sought deprived Cleanlites of a fair opportunity to prepare for and defend the claims against it. Parties, like Cleanlites, make decisions about budgeting, as well as business and litigation strategy (as well as insurance issues when implicated) based on a good faith estimate of possible exposure. Counsel makes decisions on how to staff and litigate a case based on the amount at issue. A $500,000 case is different than an eleven million dollar case. Estes' late disclosure of the future repaving damages prejudicially deprived Cleanlites and its attorneys of a fair opportunity to tailor their strategy to the case that Estes now wants to pursue. This prejudice weighs overwhelmingly in favor of exclusion.

*2) Ability to cure and likelihood the admission of the late evidence would disrupt the orderly and efficient trial of the case*

The Court will examine together the next two prongs of the Third Circuit's five-part test: (2) the ability of the injured party to cure the prejudice; (3) the likelihood the admission of the late evidence would disrupt the orderly and efficient trial of the case or of other cases in the court. At least as presented in this case, these two prongs interrelate with one another in determining whether the prejudice to Cleanlites can be cured if the Court does not exclude the damages in the Orzechowski Report.

Should the Court decide not to exclude the damages in the Orzechowski Report, due process and basic fairness would dictate that Cleanlites have an opportunity to take discovery on the factual assumptions underlying those damages. In fact, the Court holds that this is the only possible cure to the prejudice effectuated by the late disclosure of these damages. While Cleanlites could retain an expert to examine the opinions offered by the Orzechowski Report—that expert would be entitled to fully probe the facts underlying that report *and* whatever facts may be relevant to his or her own opinions. This would require the Court to re-open fact discovery. Moreover, the principle of proportionality (due to the substantial difference in the amount at issue in this case (a differential of twenty-two times what was disclosed)), would mandate affording Cleanlites a substantial amount of additional discovery.

The Court already had to extend discovery four times—three times during the fact discovery process. The close of fact discovery was originally supposed to be on May 31, 2022. But fact discovery did not actually close, in general, until January 20, 2023, with leave to take an additional fact deposition outside this period. The Court is not inclined to reopen discovery—which would necessitate not only reopening fact discovery, but also recalibrating the period for expert discovery. Both Cleanlites and the Court have an interest in the orderly and timely progress

14

of this case to its ultimate conclusion. Cleanlites should not be required to incur the expense, uncertainty and inefficiency of a renewed discovery process to cure Estes' violation of its basic disclosure requirements.

    *3) Bad faith*

In addressing bad faith, the Court wants to make a firm distinction between malicious intent and willful deception versus "flagrant disregard of a court order" or, in this case, the generally applicable requirements of the Rules of Civil Procedure. The Court does not impute malicious intent to Estes. Nor has Cleanlites been able to point to any specific evidence that would support a showing that Estes engaged in a willful intent to deceive or sandbag Cleanlites. Nevertheless, Estes, like every litigant in federal court, was bound by the unequivocal initial disclosure mandate of Rule 26(a) and the requirement to supplement imposed by Rule 26(e). This is a basic and minimal requirement of federal litigation. The failure to comply with the mandates of Rule 26 was in flagrant disregard of the rules and must be viewed as a culpable act, rather than an excusable oversight. Thus, while the Court does not find that the record demonstrates a malicious intent to deceive Cleanlites, Estes' inexcusable failure to comply with the universally applicable mandates of the Federal Rules of Civil Procedure weigh in favor of exclusion. This is consistent with the recognition that "even if there is no evidence of bad faith, where an oversight is not rationally explained and is surely prejudicial, exclusion is appropriate." *Aetna*, 2021 WL 949454, at *4.

    *4) Importance of the evidence*

The last consideration is the importance of the damages described by the Orzechowski Report to Estes' case. There is no question that these damages dwarf the other categories of damages disclosed by Estes. But the amount of damages is not, alone, a determinative factor. It is significant for the Court's analysis that future repaving and the associated damages were never

disclosed and never specifically mentioned by Estes. In other words, from the initiation of this litigation until it served its expert reports on April 6, 2023, Estes never focused its case on future remediation of the impacted area. It would be difficult, therefore, to contend that these damages are a critical component of Estes' claims. Excluding them will not leave Estes out of court. Nor will it preclude Estes from pursuing all of the claims for all of the damages that it sought until the point it served the Orzechowski Report. Estes may pursue the same case against Cleanlites that it did through the entire, extended, period of fact discovery. *See Aetna*, 2021 WL 949454, at *6 ("[H]ere exclusion merely binds Aetna to its own long-espoused theory of this case, which it repeated to [defendant's] detriment during discovery.").

### III.   CONCLUSION

The Court has carefully considered "whether the exclusion of evidence is an appropriate sanction for [Estes'] failure to comply with discovery duties." *Nicholas,* 227 F.3d at 148. Estes has inexcusably failed to comply with the disclosure and supplementation mandates of Rule 26. Under the five-part analysis required by the Third Circuit, the Court holds that Estes' failure warrants the exclusion of the damages pursuant to Rule 37(c)(1). Estes will not be permitted to seek the damages for repaving the impacted area discussed in the Orzechowski Report. Cleanlites' Motion to Preclude Plaintiff's Damages Claims Not Disclosed in Discovery (ECF No. 66) will be granted. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

6/1/2023
Date